IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| AMERISPEC, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:18-cv-02247-TLP-dkv |
| | ) | |
| OMNI ENTERPRISES, INC., ARNOLD MCLAURIN, and RENA MCLAURIN, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING PLAINTIFF AMERISPEC, L.L.C.'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff AmeriSpec, L.L.C. ("AmeriSpec") seeks a preliminary injunction to enforce a covenant not to compete provision in its contract with Defendants. (ECF Nos. 1, 9, 29.) Defendants Omni Enterprises, Inc. ("Omni"), Arnold McLaurin, and Rena McLaurin (collectively, "Defendants") argue that the contracts have expired, so an injunction is not warranted. (ECF No. 24.) The Court held a Preliminary Injunction Hearing on May 8, 2018, at which Arnold McLaurin testified about his Declaration (ECF No. 24-1) and the Declaration of Gale Colvin, AmeriSpec's Brand Leader. (ECF No. 29-1.) For the following reasons, AmeriSpec's Motion is GRANTED, and the Court issues a preliminary injunction as described below as to all Defendants.

## BACKGROUND

AmeriSpec is a national franchisor of residential and commercial property inspection services with 125 independently owned AmeriSpec franchises operating in 175 territories throughout the country. (ECF No. 1 at PageID 2.) In 1995, Arnold McLaurin ("Mr. McLaurin")

1

entered into an agreement to operate an AmeriSpec franchise for ten (10) years in a Designated Territory covering an area around Fayetteville, Cumberland County, North Carolina (the "Cumberland Franchise"). AmeriSpec and Mr. McLaurin renewed the Cumberland Franchise for ten (10) years on November 9, 2005, with another Franchise Agreement (the "Cumberland Franchise Agreement"). (ECF No. 1-1.) In December 2007, Mr. McLaurin, Rena McLaurin ("Mrs. McLaurin," collectively, the "McLaurins"), and their company, Omni, bought another AmeriSpec franchise of a Designated Territory covering an area around Lexington, Lexington County, South Carolina (the "Lexington Franchise"). (*See* ECF No. 1-2.) The parties entered into a separate ten (10)-year Franchise Agreement for this franchise (the "Lexington Franchise Agreement").[1] (ECF No. 1-2.) Defendants operated both Franchises out of a single building behind the McLaurins' home, located at 7363 Fire Department Road, Hope Mills, North Carolina. (ECF No. 1 at PageID 1.)

The Franchise Agreements contain identical language regarding the grant and renewal of the Franchises, stating in relevant part :

> 3.)    GRANT OF FRANCHISE AND RENEWAL OF FRANCHISE
>
> (01)    Subject to the provisions of this Agreement, the Company [AmeriSpec] grants to the Franchisee a Franchise for a term of ten (10) years, commencing on the date of this Agreement, to utilize the System of Operation and to use the Names and Marks of the Company in the conduct of a residential inspection business operated from one location to be selected by the Franchisee and approved by the Company within the geographic area (the Designated Territory) as described in Exhibit A.
>
> \*    \*    \*

---

[1] The Cumberland Franchise Agreement and the Lexington Franchise Agreement are collectively called the "Franchise Agreements." Mr. McLaurin, with or without the other Defendants, also bought other AmeriSpec franchises, but they are not at issue here.

(03)[2]   If, upon expiration of the initial term or any renewal term of the Franchise,[3] the Franchisee has complied with all the provisions of the Franchise Agreement which is then expiring, has operated the Franchised Business utilizing and conforming to the System of Operation, has utilized exclusively the Names and Marks in the operation of the Franchised Business, and has upgraded the office of the Franchised Business to meet the Company's then standards, **the Franchisee shall have the option to renew the Franchise for an additional term as defined by the then current agreement. To renew the Franchise, the Franchisee shall execute the Company's then current form of Franchise Agreement and all other agreements and legal instruments and documents then customarily employed by the Company in the grant of Franchises . . . . The Franchisee shall give the Company not less than two hundreed ten (210) days' prior written notice of an election not to renew the Franchise. Failure or refusal by the Franchisee to execute all agreements and documents within thirty (30) days after delivery to the Franchisee shall be deemed an election by the franchisee not to renew the Franchise.**

(04)[4]   If the Franchise is renewed, the then current franchise agreement may contain terms inconsistent with those in this Agreement. To the extent that it is impossible for the renewing franchisee to comply with any such terms immediately upon renewal, the Company shall provide the franchisee a reasonable period of time, as defined by the Company, unless specifically otherwise provided in the agreement, for the franchisee to comply with any terms that are in fact inconsistent with those in this Agreement. All such terms and time periods will be addressed in writing at the time of renewal.

(ECF No. 1-1 at PageID 34–35; ECF No. 1-2 at PageID 81–82 (emphasis added).)   The Franchise Agreements also contain the following Noncompete Clause, which reads, in relevant part:

15.)   COMPETITION

---

[2] This is actually Section 3, Subsection 04 in the Lexington Franchise Agreement, but the language is identical.
[3] As defined in the Cumberland Franchise Agreement, "Term of the Franchise" shall mean the initial term of the Franchise and all renewal terms if the Franchise is renewed. (ECF No. 1-1 at PageID 33.)
[4] Subsection (05) in the Lexington Franchise Agreement.

> The Franchisee acknowledges the Company must be protected against the potential for unfair competition by the Franchisee's use of the Company's training, assistance, and trade secrets in direct competition with the Company. The Franchisee therefore agrees that it shall not, during the Term of the Franchise, either directly or indirectly, operate, own, be employed by, or consult with, any business conducting any type of residential inspections, or offering residential and commercial building inspection services and other related services permitted under the Agreement, other than one operated under this Agreement with the Company.[5] **Further, the Franchisee agrees that it shall not, for a period of one year following the effective date of termination or expiration of this Agreement . . . either directly or indirectly operate, own, be employed by, or consult with, any business conducting any type of residential and commercial building inspections, or providing residential or commercial property inspection services, within the Designated Territory, within ten (10) miles of the Designated Territory, or within a radius of ten (10) miles from the location of any other AmeriSpec® office in existence at the time of expiration, termination, or assignment of this Agreement.**[6]

(ECF No. 1-1 at PageID 46; ECF No. 1-2 at PageID 93.) Additionally, the Franchise Agreements require any modifications to be in writing and signed by both parties. (ECF No. 1-1 at PageID 57; ECF No. 1-1 at PageID 104.)

From 1995 to 2015, the Court finds that the parties conducted business with one another according to the Franchise Agreements. Mr. McLaurin also served as a member of the AmeriSpec National Franchise Council, which is a group of AmeriSpec franchisees who meet quarterly to discuss issues related to the AmeriSpec franchise business. (ECF No. 1 at PageID 7.) It is undisputed that from 1995 until February 22, 2018, Defendants used the AmeriSpec's names and marks, its proprietary software—including training materials—email accounts, website, and, for all intents and purposes, operated as an AmeriSpec franchise.[7] Defendants have also used the same phone number, 910-426-4747, during the terms of the Franchise Agreements

---

[5] The Court refers to this clause as the "In-Term" Noncompete Clause.
[6] Similarly, the Court refers to this clause as the "Post-Term" Noncompete Clause.
[7] Mr. McLaurin confirmed this fact in his testimony, and Defendants' counsel confirmed it during the Hearing.

to the present, and they executed an assignment of that number to AmeriSpec in the Cumberland Franchise Agreement. (ECF No. 1-1 at PageID 66.) However, that phone number is still operable at Defendants' office where they are operating a property inspection business.

The Cumberland Franchise Agreement was supposed to expire on November 20, 2015, (ECF No. 1-1 at PageD 34), but the parties continued to operate as if the contract remained in full force and effect. Mr. McLaurin states in his Declaration that after the expiration of the Cumberland Franchise Agreement, he "continued to remit services fees to AmeriSpec (which AmeriSpec continued to accept) and [he] continued to use the AmeriSpec mark in connection with [his] activities." (ECF No. 24-1 at PageID 343.) "AmeriSpec knew that [he] continued to use the mark and expressed no objection." (*Id.*)

Mr. McLaurin recounts four other instances between June 2016 and June 2017 where AmeriSpec, apparently recognizing the expiration date, either sent him proposed amendments or new franchise agreements for his signature to extend the Cumberland Franchise Agreement. (ECF Nos. 24-5–24-9.) Mr. McLaurin did not sign most of them. Nevertheless, throughout this time—and up to February 22, 2018—Mr. McLaurin and Defendants continuously operated the Cumberland Franchise by providing residential and commercial property inspection services as AmeriSpec in the Fayetteville, North Carolina area and paid service fees to AmeriSpec. (*See* ECF No. 24-1.)[8] On March 31, 2017, Mr. McLaurin signed an Amendment extending the terms and conditions of the Cumberland Franchise Agreement to May 1, 2017. (ECF No. 1-1 at PageID 75.) Defendants executed a similar Amendment to the Lexington Franchise Agreement, which extended its terms and conditions to November 20, 2017. (ECF No. 1-2 at PageID 118.)

---

[8] Mr. McLaurin was also active on the AmeriSpec National Franchise Council until at least September 2017 when AmeriSpec paid for him to attend the AmeriSpec National Convention in Phoenix, Arizona, at which he participated in meetings and training sessions. (ECF No. 29-1 at PageID 709.)

5

The Court finds no evidence from before February 22, 2018 that Mr. McLaurin or Defendants notified AmeriSpec—either in writing or by their conduct—that they did not wish to renew the Cumberland or Lexington Franchise Agreements.[9]

On February 23, 2018, Defendants opened a residential and commercial property inspection business called "American Property Inspection Services." (ECF No. 24-1 at PageID 346.) AmeriSpec learned of Defendants' operation of American Property Inspection Services on the same day that the McLaurins posted a flyer on Mrs. McLaurin's Facebook page with the following announcement: "New Name, <u>Same</u> Team! PASS THE WORD FROM…Arnold & Rena McLaurin[:] Your Local AmeriSpec is now American Property Inspections." (ECF No. 1-4.) Defendants advertised on their website for American Property Inspection Services that they have been in the property inspection business "for twenty two years," and that Mr. McLaurin "started his property inspection business by purchasing a national franchise brand." (ECF No. 1-5 at PageID 128–29.) For a time, Defendants used forms that mention both AmeriSpec and American Property Inspection Services. (ECF No. 1-6.) Defendants admit they use the same 910-426-4747 telephone number and Fire Department Road address to run American Property Inspection Services.

On March 8, 2018, as required by the Cumberland Franchise Agreement, AmeriSpec sent Defendants a Cease and Desist Letter informing them that AmeriSpec understood that they were violating the Noncompete Clause of the Franchise Agreements. (ECF No. 1-7 at PageID 141–42.) The Letter notified Defendants that they had thirty (30) days to cure their default or otherwise respond to AmeriSpec's efforts to contact them. (*Id.*) Defendants did not respond to

---

[9] Mr. McLaurin did testify about conversations he had with Mr. Colvin's predecessor, Ms. Teresa Westphall. (*See also* ECF No. 24.) However, Mr. McLaurin admitted that he had never mentioned anything to Mr. Colvin, who became Brand Manager in September 2017, despite attending National Franchise Council meetings with him on at least one occasion.

the March 8, 2018 Cease and Desist Letter, and AmeriSpec filed its Verified Complaint and the underlying Motion.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65(a), a district court may issue a preliminary injunction prior to a trial on the merits. *AmeriSpec, Inc. v. Psaris*, No. 09-2360, 2009 WL 10698732, at *2 (W.D. Tenn. Sept. 10, 2009) (citation omitted). The procedures are less formal and the evidence is less complete than at the time of trial, so "a party is not required to prove his case in full at a preliminary injunction hearing[,]" and the court's findings of fact and conclusions of law are not binding at the trial on the merits. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal quotation marks omitted)); *but see Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (noting that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion"). A preliminary injunction is an equitable remedy, albeit an "extraordinay" one, that the district court has the sound discretion to grant or deny. *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equitites tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (collecting cases). These four considerations are "factors to be balanced and not prerequisites that must be satisfied." *Certified Restoration Dry Cleaning Network*, 511 F.3d at 542. (internal quotation marks and citations omitted). A plaintiff must show that irreparable harm is likely, as opposed to

possible, and that money damages would not provide the adequate redress. *Winter*, 555 U.S. at 7; *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

## ANALYSIS

I.  **Preliminary Injunction Factors**

"[I]f a party demonstrates substantial likelihood of success on the merits, the three other factors will favor the party as well." *Total Car Franchising Corp. v. L & S Paint Works, Inc.*, 981 F. Supp. 1079, 1081 (M.D. Tenn. 1997) (citations omitted). For AmeriSpec to succeed on the merits of its Motion, it must show that it is likely to succeed on the merits of its argument that the Post-Term Noncompete Agreement is still in effect. The parties' briefing mostly focuses on this factor, so the Court's analysis does as well.

A.  **Likelihood of Success on the Merits**

AmeriSpec has alleged claims against Defendants, *inter alia*, for breach of the Franchise Agreements' In-Term and Post-Term Noncompete Clauses and post-termination obligations, trademark infringement under the Lanham Act, 15 U.S.C. § 1501 *et seq.*, and equitable estoppel. (ECF No. 1 at PageID 16–27.) In addition to AmeriSpec's other claims, the Court finds that it is likely to succeed on the merits of its claims regarding the Noncompete Clause, making a preliminary injunction appropriate.

1.  **Applicability of the Cumberland Franchise Agreement**

By its express terms, the In-Term Noncompete Clause was in effect during the "Term of the Franchise," or during the intitial term and all renewal terms, and the Post-Term Noncompete period runs for one year from the effective date of expiration or termination of the Franchise Agreements. (ECF No. 1-1 at PageID 46; ECF No. 1-2 at PageID 93.) Defendants submit that the Post-Term Noncompete Clause in the Lexington Franchise Agreement, which they admit is

still in effect, cannot enjoin Defendants from operating a property inspection business in the area covered by the Cumberland Franchise Agreement. Defendants argue the Cumberland Franchise Agreement expired on May 1, 2017, meaning the Post-Term Noncompete Clause expired on May 1, 2018.[10] While Defendants admit that the parties operated an AmeriSpec franchise under some kind of contractual relationship in Cumberland County after May 1, 2017, they deny that they were operating under the terms of the Cumberland Franchise Agreement, including the Post-Term Noncompete Clause. (ECF No. 24 at PageID 321.)

The Court finds for the purposes of this Motion that the parties operated under the Cumberland Franchise Agreement, or an implied contract containing its same terms and conditions, until April 7, 2018, thirty days after Defendants failed to respond to AmeriSpec's Cease and Desist Letter. While the Cumberland Franchise Agreement states that the Franchisee has the right to renew and that his failure to execute all agreements and documents for renewal within thirty days constitues an election not to renew, the parties' course of conduct as Franchisor and Franchisee of the Cumberland Franchise was unchanged from 1995 to February 22, 2018. The Tennessee Supreme Court has held that "when parties continue to perform the same services after a contract for a definite term has expired, it is presumed that they are operating under a new contract having the same terms and conditions as the original one." *BSG, LLC v. Check Velocity, Inc.*, 395 S.W.3d 90, 94 (Tenn. 2012) (quoting *Delzell v. Pope*, 200

---

[10] In light of the undisputed evidence that Defendants' opened a competing business in February 2018, the Court could view this assertion as an admission that they breached the Post-Term Noncompete Clause. Under the Court's analysis, however, because Defendants continued to abide by the contract's terms until February 2018, it will be treated as an admission that Defendants breached the In-Term Noncompete Clause.

Tenn. 641, 194 S.W.2d 690, 694 (1956) (internal quotation marks omitted) (stating the general rule in the context of employment contracts)).[11]

This principle is consistent with the fact that Mr. McLaurin executed an Amendment on March 31, 2017—which was not a new contract—but an extension of the terms and conditions of the Cumberland Franchise Agreement. The Court infers from the parties' conduct and the extension of the Cumberland Franchise Agreement that the parties intended for the terms and conditions of the Cumberland Franchise Agreement, and not some other arrangement, to govern their relationship until a new renewal agreement could be signed. *Cf. Freytag v. Crass*, 913 S.W.2d 171, 173 (Tenn. Ct. App. 1995) (holding that parties continuing to operate under the terms of the contract at its termination amounted to exercise of option to renew contract for additional term); *ServiceMaster Residential/Commercial Servs., L.P. v. Westchester Cleaning Servs., Inc.*, No. 01 CIV. 2229 (JSM), 2001 WL 396520, at *3 (S.D.N.Y. Apr. 19, 2001).

Defendants cite the *Astral* case for the proposition that the mere "fact that the parties continue to deal under some sort of informal arrangement does not, without more, mean that all the terms of the expired formal contract continue to apply." *Astral Health & Beauty, Inc. v. Aloette of Mid-Mississippi, Inc.*, 895 F. Supp. 2d 1280, 1282 (N.D. Ga. 2012) (quoting *Town of Webster v. Vill. of Webster*, 280 A.D.2d 931, 933, 720 N.Y.S.2d 664, 667 (2001)) (internal quotation marks omitted). But Defendants failed to include the next sentence in the *Astral* case (which echoes Tennessee law): "However, the parties' actions could create an implied contract under which their rights and obligations continue to be measured as provided in the old contract." *Id.* at 1283 (internal quotation marks and citation omitted).

---

[11] This at least suggests that an implied ten-year term could have been in effect, but the Court needs not determine whether the term was for ten years or month-to-month, as AmeriSpec contends. (ECF No. 1 at PageID 8–9.)

Mr. McLaurin claims that he did not intend to renew the Cumberland Franchise Agreement, but there is no evidence he communicated that to AmeriSpec—even when he was face-to-face with AmeriSpec management in National Franchise Council meetings—before February 23, 2018. The only evidence is that Mr. McLaurin and Defendants "accepted the benefits of franchise status and traded on the good will" of AmeriSpec until he abruptly switched the name of his business. *See ServiceMaster Residential/Commercial Servs.*, 2001 WL 396520, at *3. This is significant not only because the Franchise Agreements include affirmative steps the franchisee must take in order to effectuate the termination of the agreement, such as providing express notice, but there are also express post-termination obligations for the franchisee, such as returning AmeriSpec manuals and software, notifying the telephone company of termination of the right to use the AmeriSpec phone number, and payment of fees (*see* ECF No. 1-1 at PageID 52.) Defendants did not comply with these contractual provisions.

For these reasons, both parties engaged in conduct showing mutual assent to operate under the terms and conditions of the Cumberland Franchise Agreement, which would create a contract implied in fact. *See Angus v. City of Jackson*, 968 S.W.2d 804, 808 ("Mutual assent and a meeting of the minds cannot be accomplished by the unilateral action of one party.") (citation omitted).

### 2. Whether the Post-Term Noncompete Clause is Enforceable

The Post-Term Noncompete Clause must be valid and enforceable for AmeriSpec to likely prevail on the merits. Under Tennessee law, covenants not to compete are disfavored but are enforced if reasonable. *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999). "The question of what is reasonable usually involve[s] the duration and geographic scope of the covenant, as well as other factors which balance one party's right to earn a living and to

practice his trade against the other's right to be free from unfair competition." *Servpro Indus., Inc. v. Pizzillo*, No. M2000-00832-COA-R3CV, 2001 WL 120731, at *6 (Tenn. Ct. App. Feb. 14, 2001) (citing *Central Adjustment Bureau v. Ingram*, 678 S.W .2d 28 (Tenn. 1984); *Allright Auto Parks v. Berry*, 409 S.W.2d 361 (Tenn. 1966)). The Court finds the Post-Term Noncompete Clause in both Franchise Agreements to be reasonable and enforceable against Defendants. *See, e.g., id.* at *8 (examining other Tennessee decisions on covenants not to compete to hold that franchisor "should be able to protect the value of its franchises by preventing its former franchisees from competing against it" within 25 miles of the designated territory for two years).

AmeriSpec cites a string of cases in which courts have consistently reviewed AmeriSpec's noncompete clauses in their franchise agreements, which are very similar to the one at issue here, and upheld them as enforceable to protect its legitimate interests. The Court agrees with the courts' reasoning in these cases. *See AmeriSpec v. Psaris*, 2009 WL 10698732, at *3 ("AmeriSpec has a right to enforce its contracts, and, in seeking to enforce the franchise agreement's noncompete clause, AmeriSpec is only seeking the benefit of terms to which the parties previously agreed.").

Defendants thinly attack the enforceability of the Post-Term Noncompete Clause by arguing that the Tennessee choice-of-law provision in the Cumberland Franchise Agreement, (ECF No. 1-1 at PageID 55), is contrary to a "fundamental policy" of North Carolina because North Carolina requires noncompete agreements to be in writing, *see* N.C. Gen. Stat. § 75-4. Defendants also argue that an implied in fact noncompete agreement violates the Tennessee Statute of Frauds, Tenn. Code Ann. § 29-2-101(5). The Court rejects these arguments, as both parties signed the Cumberland Franchise Agreement, and the Court finds that its terms and

12

conditions governed the parties' relationship until the effective termination date of April 7, 2018. Thus, the Post-Term Noncompete Clause that the parties' bargained for is enforceable against Defendants.

### B. Irreparable Harm

AmeriSpec has shown through the facts of this case and extensive caselaw that this Court's failure to enjoin Defendants from operating a competing business in the territories covered by the Franchise Agreements poses a substantial threat of irreparable harm to its franchise business. Here, AmeriSpec has shown that it would suffer "the loss of customer goodwill attributable to the display of AmeriSpec® Names and Marks in the Desigated Territories" and cited caselaw showing that this "cannot be quantified in terms of monetary damages alone." (ECF No. 9-1 at PageID 182–83 (citing *AmeriGas Propane, Inc. v. Crook*, 844 F. Supp. 379, 390 (M.D. Tenn. 1993) (stating "[t]he loss of customer goodwill and injuries that are a consequence of unfair competition are difficult to compute and can constitute irreparable harm") (internal citation omitted).)

Defendants claim that AmeriSpec assumes with no evidence "that the AmeriSpec mark enjoys any goodwill within any of the Designated Territories," and that any goodwill belongs to Defendants through Mr. McLaurin's personal experience, professional contacts, and community involvement. (ECF No. 24 at PageID 330.) Defendants want this Court to somehow separate the McLaurins' personal goodwill from the corporate goodwill they enjoyed for more than two decades. That is an impossible taks without speculation. Plus, this argument ignores that before February 2018, Mr. McLaurin had been a property inspector for over two decades as an AmeriSpec Franchisee and that Defendants had signed two Franchise Agreements acknowledging that any goodwill derived from being an AmeriSpec francnhisee belongs to

13

AmeriSpec. (ECF No. 1-1 at PageID 42; ECF No. 1-2 at PageID 89.)[12] The Court will respect the terms of the Franchise Agreements.

In Cumberland County, Defendants went from being AmeriSpec Franchisees to operating a competing business overnight in violation of terms and conditions that they agreed to. AmeriSpec satisfies its burden by showing that this conduct threatens its entire franchise model and its ability to find a willing candidate to open an AmeriSpec franchise in Cumberland County. *See Psaris*, 2009 WL 10698732, at *3. The Declaration of Gale Colvin states that other AmeriSpec franchisees in the Carolinas have expressed concern that Defendants immediately opened a competing business in the marketplace with knowledge of AmeriSpec's entire playbook. (*See* ECF No. 29-1 at PageID 718.) Since May 2017, AmeriSpec has also received at least four leads for purchasing franchises in Defendants' old territories (*id.* at PageID 716–17), and AmeriSpec's counsel conferred with Mr. Colvin during the Preliminary Injunction Hearing to confirm that there is one serious candidate for opening a franchise in Cumberland County.

Even if, as Defendants argue, they are no longer using any of AmeriSpec's names, marks, or proprietary information, there is evidence that they were when they launched "American Propery Inspection Services." (ECF No. 1-6.) "There is a recognized danger that former franchisees will use the knowledge that they have gained from the franchisor to serve its former customers, and that continued operation under a different name may confuse customers and thereby damage the good will of the franchisor." *ServiceMaster Residential/Commercial Servs.*, 2001 WL 396520, at *3 (citing *Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F.Supp. 683, 691–92 (D.N.J. 1993); *Economou v. Physicians Weight Loss Ctrs of America.*, 756 F. Supp. 1024, 1032 (N.D. Ohio 1991) (parenthetical citations omitted)). The flyer that Defendants posted

---

[12] Mr. McLaurin further admitted during his testimony that all of his professional and community involvement as a property inspector had been as an AmeriSpec Franchisee.

saying that their local "AmeriSpec" is now "American Property Inspections" is confusing, to say the least.

C. **Balancing of the Equities**

Defendants do not address the balance of the equities in their Response, but their counsel made it clear during the Preliminary Injunction Hearing that an injunction would burden the McLarins by effectively closing their property inspection business. The Court recognizes that an injunction would have serious consequences for Defendants. However, the Court is persuaded by the line of cases cited by AmeriSpec and finds that this preliminary injunction against them is a product of Defendants' own making. *See, e.g., Total Car Franchising Corp.*, 981 F. Supp. at 1081 (expressing sympathy to small-business defendant but finding that rule of law required defendant to comply "with the terms of the Agreement that provided him with substantial benefits for more than two years"); *Psaris*, 2009 WL 10698732, at *3. This Court finds it inequitable for Defendants to be able to reap the benefits of being AmeriSpec Franchisees and to try to see how far they could push the operation of their Franchises beyond the reach of the Post-Term Noncompete period that they expressly bargained for. The evidence also indicates that operating American Property Inspection Services is not Defendants' only source of income, and Mr. McLaurin retains his licenses as a real estate broker and general contractor. (ECF No. 24-1 at PageID 338.) Thus, the balance of the equities tips in AmeriSpec's favor.

D. **The Public Interest**

As stated in the *Psaris* case, "[t]here is a general public interest in the enforcement of contracts." 2009 WL 10698732, at *3; *see also AmeriGas Propane*, 844 F. Supp. at 390 ("Tennessee has a strong public policy in favor of upholding contracts"). AmeriSpec, like all franchisors, has a clear interest "in protecting the value of the basic product is has to sell: its

franchises." *Servpro*, 201 WL 120731, at *7 (citations omitted). Thus, this fourth factor weighs in favor of AmeriSpec.

## II.     Duration of Preliminary Injunction

Because AmeriSpec has a strong likelihood of prevailing on the merits and the other factors weigh in its favor, a preliminary injunction is warranted. AmeriSpec seeks to have the injunction run from a period of one year from the date the Court issues the injunction. However, the parties bargained for the one year to run from the date of the termination or expiration of the Cumberland Franchise Agreement, so the one-year period will run from April 7, 2018.

The parties appear to agree that Defendants have not attempted to operate a competitive business in the area covered by the Lexington Franchise Agreement, and AmeriSpec maintains that the Lexington Franchise Agreement expired under the Amendment on November 20, 2017. Therefore, the Post-Term Noncompete Clause in the Lexington Franchise Agreement is in effect until November 20, 2018. While there is no evidence that Defendants are currently trying to perform property inspections in Lexington County, the Court finds Defendants' establishment of a competing business during the noncompete period in the same office where they previously operated the Lexington Franchise makes it likely that AmeriSpec will prevail on the merits of its claims—and poses enough of a threat of irreparable harm—that this Order also ENJOINS Defendants from operating any competing business in the Designated Territory of the Lexington Franchise Agreement from the date of the entry of this Order until November 20, 2018.

AmeriSpec also requests a preliminary injunction enforcing all post-termination and post-expiration obligations of the Franchise Agreements. (ECF No. 9 at PageID 159.) Other than the Post-Term Noncompete Clause in the Franchise Agreements, the 910-426-4747 phone number was the only post-termination and post-expiration obligation that the parties raised in the Motion

and the Preliminary Injunction Hearing.  The Court declines to to enter a blanket preliminary injunction order enforcing all post-termination and post-expiration obligations of the Franchise Agreements, but the Court does ORDER that Defendants, through their counsel, shall work with AmeriSpec in effectively transferring the 910-426-4747 phone number to AmeriSpec within ten (10) days from the entry of this Order.

## CONCLUSION

Thus, the Court GRANTS AmeriSpec's Motion for Preliminary Injunction and ENJOINS all Defendants as follows:  Arnold McLaurin, Rena McLaurin, and Omni Enterprises, Inc.—as well as their agents, successors, and assigns, and all others in active concert or participation with them—shall not, for a period of one year from April 7, 2018, directly or indirectly operate, own, be employed by, or consult with any business conducting any type of residential and commerical building inspections, or provide residential or commecial property inspection services, within Cumberland County, North Carolina, or within ten miles of the outer border of Cumberland County, or within a radius of ten miles from the location of any other AmeriSpec location in existence since April 7, 2018.  The Court also ORDERS that Defendants, through their counsel, shall work with AmeriSpec in effectively transferring the 910-426-4747 phone number to AmeriSpec within ten (10) days from the entry of this Order.

Moreover, Arnold McLaurin, Rena McLaurin, and Omni Enterprises, Inc.—as well as their agents, successors, and assigns, and all others in active concert or participation with them—shall not, for a period of 188 days, or up to and including November 20, 2018, directly or indirectly operate, own, be employed by, or consult with any business conducting any type of residential and commerical building inspections, or provide residential or commecial property inspection services, within Lexington County, South Carolina, or within ten miles of the outer

border of Lexington County, or within a radius of ten miles from the location of any other AmeriSpec location in existence since April 7, 2018. The Court finds that under the Franchise Agreements and on the appearance that AmeriSpec appears fully solvent, the posting of a bond is not warranted.

**SO ORDERED**, this 16th day of May, 2018.

                                        s/ Thomas L. Parker
                                        THOMAS L. PARKER
                                        UNITED STATES DISTRICT JUDGE